UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMERICAN HOME ENERGY INC.,
HOMEENERGY INC., ENERGYINVEST LLC,
AND THOMAS ENZENDORFER,                          **REPORT AND**
                                                 **RECOMMENDATION**
                    Plaintiffs,
                                                 21-CV-1337
         v.                                      (Ross, J.)
                                                 (Marutollo, M.J.)
AEC YIELD CAPITAL LLC, AEC 51 YIELD,
LLC, AND SWISS ALP ASSET
MANAGEMENT GMBH,

                    Defendants.
------------------------------------------------------------------X
AEC YIELD CAPITAL LLC, AEC 51 YIELD,
LLC,

                    Plaintiffs,
                                                 21-CV-1479
         v.                                      (Ross, J.)
                                                 (Marutollo, M.J.)
AMERICAN HOME ENERGY INC.,

                    Defendant.
------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

In separate federal civil actions, now consolidated, the parties have brought suit against each other in connection with a failed arrangement for the sale and financing of solar energy installation contracts.  Currently pending before the Court is a motion for default judgment, filed on April 15, 2024 by AEC Yield Capital LLC ("AEC Yield") and AEC 51 Yield, LLC ("AEC 51") against American Home Energy Inc. ("AHE"), in one of those actions, *AEC Yield Capital LLC, et al. v. American Home Energy Inc.*, No. 21-CV-1479 (ARR) (JAM) (E.D.N.Y.) ("No. 21-CV-1479").  *See* 21-CV-1479, Dkt. No. 23.  On April 16, 2024, the Honorable Allyne R. Ross, United States District Judge, referred this matter in No. 21-CV-1479 to the undersigned for a report and recommendation.

For the reasons set forth below, this Court respectfully recommends that AEC Yield and AEC 51's motion for default judgment be granted in part and denied in part.

I.    **Background**

A.    **Procedural History**

The above-referenced consolidated actions have a lengthy and, at times, intricate procedural history, which is described in detail below.

On March 12, 2021, Plaintiffs AHE, HomeEnergy ("HomeEnergy"), EnergyInvest LLC ("EnergyInvest"), and AHE's principal, Thomas Enzendorfer ("Enzendorfer"), filed a Complaint against Defendants AEC Yield, AEC 51, Swiss ALP Asset Management GmbH ("Swiss ALP"), and Solid Income Limited ("Solid Income") in *American Home Energy Inc.*, *et al. v. AEC Yield Capital LLC, et al.*, No. 21-CV-1337 (ARR) (JAM) (E.D.N.Y.) ("No. 21-CV-1337").  *See* No. 21-CV-1337, Dkt. No. 1.

Seven days later, on March 19, 2021, AEC Yield and AEC 51 filed their complaint in No. 21-CV-1479.  No. 21-CV-1479, Dkt. No. 1.

On March 22, 2021, AEC Yield and AEC 51 filed a motion for a preliminary injunction and a temporary restraining order in No. 21-cv-1479.  No. 21-CV-1479, Dkt. Nos. 7, 8, 9.

On March 24, 2021, the Court denied AEC Yield and AEC 51's motion for a preliminary injunction and a temporary restraining order.  *See* No. 21-CV-1479, Dkt. No. 10.

On April 12, 2021, AEH filed its answer to AEC Yield and AEC 51's complaint.  No. 21-CV-1479, Dkt. No. 13.

On May 17, 2021, the Court consolidated No. 21-CV-1337 with No. 21-CV-1479.  *See HomeEnergy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR) (RER), 2021 WL 7186027 (E.D.N.Y. May 17, 2021).  In the Opinion and Order consolidating these cases, the Court noted

2

that "the two actions encompass claims that arise out of the same contractual agreements, entered into by entities that are parties to both actions." *Id.* at *1.

On June 1, 2021, in No. 21-CV-1337, AEC Yield, AEC 51, Swiss ALP, and Solid Income filed a motion to dismiss the complaint and a motion to strike certain affirmative defenses. No. 21-CV-1337, Dkt. Nos. 24-26. On June 21, 2021, AHE, HomeEnergy, EnergyInvest, and Enzendorfer opposed the motion to dismiss. No. 21-CV-1337, Dkt. Nos. 27-28. On July 2, 2021, AEC Yield, AEC 51, Swiss ALP, and Solid Income filed their reply. No. 21-CV-1337, Dkt. No. 31.

On February 28, 2022, the Court granted in part and denied in part the June 1, 2024 motion in No. 21-CV-1337. *See Am. Home Energy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR) (RER), 2022 WL 595186 (E.D.N.Y. Feb. 28, 2022). The Court ordered that "all claims against [] Solid Income are dismissed with prejudice"; [AHE's] claims, except for the alleged breach of the indemnification clause due to [AEC Yield's] assertion of rights in the interpleader action are dismissed with prejudice"; "HomeEnergy and EnergyInvest's breach of contract claim [] is dismissed with prejudice"; AHE, HomeEnergy, EnergyInvest, and Enzendorfer's breach of good faith and fair dealing claim and their request for declaratory judgment are dismissed with prejudice; "Enzendorfer's breach of contract claim [] and [AHE, HomeEnergy, EnergyInvest, and Enzendorfer's] second request for declaratory judgment [] are dismissed without prejudice as to repleading within fourteen days." *Id.* at *19. The Court also struck certain affirmative defenses in the No. 21-CV-1479 complaint. *See id.*

On March 21, 2022, in No. 21-CV-1337, AHE, HomeEnergy, EnergyInvest, and Enzendorfer filed an amended complaint. No. 21-CV-1337, Dkt. No. 38. After AEC Yield, AEC 51, and Swiss ALP noted their intention to move to dismiss the amended complaint, and after the

3

Court's review of the pre-motion conference letter, the Court permitted the filing of a second amended complaint, which AHE, HomeEnergy, EnergyInvest, and Enzendorfer filed in No. 21-CV-1337 on April 5, 2022.  No. 21-CV-1337, Dkt. No. 41.

On April 13, 2022, then-United States Magistrate Judge Ramon E. Reyes set a discovery schedule in No. 21-CV-1337 and No. 21-CV-1479.  *See* Minute Entry, dated April 13, 2022.

On April 18, 2022, in No. 21-CV-1337, AEC Yield, AEC 51, and Swiss ALP filed a motion to dismiss the second amended complaint.  *See* No. 21-CV-1337, Dkt. Nos. 44-47.  On April 25, 2022, in No. 21-CV-1337, AHE, HomeEnergy, EnergyInvest, and Enzendorfer opposed the motion.  *See* No. 21-CV-1337, Dkt. No. 48.  AEC Yield, AEC 51, and Swiss ALP filed their reply on May 2, 2022.  *See* No. 21-CV-1337, Dkt. Nos. 49-50.

On September 9, 2022, in No. 21-CV-1337, AEC Yield, AEC 51, and Swiss ALP filed a motion to compel discovery, to which AHE, HomeEnergy, EnergyInvest, and Enzendorfer opposed on September 23, 2022.  *See* No. 21-CV-1337, Dkt. Nos. 53, 55.

On October 4, 2022, the Court granted in part and denied in part AEC Yield, AEC 51, and Swiss ALP's motion to dismiss the second amended complaint.  *See Am. Home Energy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR) (RER), 2022 WL 5113403 (E.D.N.Y. Oct. 4, 2022). The Court granted part AEC Yield, AEC 51, and Swiss ALP's motion to dismiss the breach of contract claim on behalf of HomeEnergy and the fraud claims on behalf of AHE, HomeEnergy, EnergyInvest, and Enzendorfer; the Court denied the motion as to the breach of contract claim on behalf of AHE.  *See id.* at *1, 5-10.

On October 17, 2022, AHE, HomeEnergy, EnergyInvest, and Enzendorfer filed a third amended complaint.  No. 21-CV-1337, Dkt. No. 59.

On October 31, 2022, AEC Yield, AEC 51, and Swiss ALP filed a letter seeking a pre-motion conference in advance of their anticipated motion to dismiss the third amended complaint. No. 21-CV-1337, Dkt. No. 60. On November 14, 2022, the Court set a briefing schedule regarding the anticipated motion. *See* No. 21-CV-1337, Text Order dated November 14, 2022.

On November 16, 2022, Enzendorfer filed a voluntary petition for relief under chapter 11, subchapter V, of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, San Francisco Division. No. 21-CV-1337, Dkt. No. 63; *see also* No. 22-BK-30622 (Bankr. N.D. Cal.) (Blumenstiel, J.). Pursuant to Section 362(a) of the Bankruptcy Code, Enzendorfer argued that his filing operated as an automatic stay of this action. *See id.*

On December 12, 2022, the Court denied AEC Yield, AEC 51, and Swiss ALP's motion to compel discovery, without prejudice to renewal following resolution of their motion to dismiss the third amended complaint. *See* No. 21-CV-1337, Text Order, dated December 12, 2022.

On December 16, 2022, AEC Yield, AEC 51, and Swiss ALP filed their motion to dismiss the third amended complaint. *See* No. 21-CV-1337, Dkt. No. 67.

On January 17, 2023, Enzendorfer argued, both in the bankruptcy court and before this Court, that the automatic stay applied to No. 21-CV-1337. *See* No. 21-CV-1337, Dkt. No. 69.

On the same date, this Court "ordered [the parties to] engage in motion practice before Bankruptcy Judge Blumenstiel [in the Northern District of California] to determine the applicability of the automatic bankruptcy stay to this action" and ordered "all deadlines in this action to be held in abeyance." No. 21-CV-1337, Text Order dated January 17, 2023.

On March 31, 2023, Judge Blumenstiel held a hearing in which bankruptcy counsel for Enzendorfer agreed that the bankruptcy stay did not apply to No. 21-CV-1337, subject to certain

conditions and an agreed-upon order, which Judge Blumenstiel issued on April 3, 2023. *See* No. 21-CV-1337, Dkt. No. 70-1. Judge Blumenstiel's agreed-upon order holds that the automatic stay does not apply to the bankruptcy action as Enzendorfer is not a party to this action. *See* No. 21-CV-1337, Dkt. No. 70-1 ¶ 2.

On April 4, 2023, AEC Yield, AEC 51, and Swiss ALP informed the Court of Judge Blumenstiel's holding. *See* No. 21-CV-1337, Dkt. No. 70.

On April 5, 2023, in light of Judge Blumenstiel's ruling, AHE, HomeEnergy, EnergyInvest, and Enzendorfer were ordered to file an opposition to the motion to dismiss the third amended complaint by April 28, 2023. *See* No. 21-CV-1337, Text Order, dated April 5, 2023.

No opposition to the motion to dismiss the third amended complaint in No. 21-CV-1337 was filed. Instead, on April 21, 2023, counsel for AHE, HomeEnergy, EnergyInvest, and Enzendorfer filed a motion to withdraw from the case. See No. 21-CV-1337, Dkt. Nos. 71, 72. The Court granted counsel's motion to withdraw on May 9, 2023. *See* No. 21-CV-1337, Text Order dated May 9, 2023.

No new attorney has appeared on behalf of AHE, HomeEnergy, EnergyInvest, and Enzendorfer to date.

On May 26, 2023, based on defendants' representations that AHE has not produced documents in response to discovery requests, the Court ordered AHE to show cause why Count One should not be dismissed by no later than July 28, 2023. *See* No. 21-CV-1337, Text Order, dated May 26, 2023.

On September 8, 2023, AEC Yield, AEC 51, and Swiss ALP moved for summary judgment. *See* No. 21-CV-1337, Dkt. No. 76.

On September 11, 2023, the Court issued the following order:

6

> As of May 11, 2023, [AHE, HomeEnergy, EnergyInvest, and Enzendorfer] are not represented by counsel in this matter.  Corporate entities are not permitted to appear in federal court *pro se*, and, where a corporation fails to appear through counsel, default judgment may be entered against it.  *See, e.g.*, *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006); *Trustees of Bldg. Trades Educ. Benefit Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at \*3 (E.D.N.Y. July 19, 2021) (collecting cases).  Accordingly, [the Court] order[s] that [AHE, HomeEnergy, and EnergyInvest] to obtain new counsel by September 22, 2023, and that new counsel enter a notice of appearance by September 22, 2023. [AHE, HomeEnergy, and EnergyInvest] are advised that failure to enter a notice of appearance by September 22, 2023 will result in an entry of default.

No. 21-CV-1337, Text Order dated September 11, 2023.

On September 27, 2023, the Court dismissed AHE, HomeEnergy, EnergyInvest, and Enzendorfer's "claims for failure to prosecute and enter[ed] default against [] AHE on claims by [AEC Yield and AEC 51] in the consolidated case."  No. 21-CV-1337, Dkt. No. 77 at 1, 12 (dismissing the Third Amended Complaint); No. 21-CV-1479, Dkt. No. 19 (same).  The Court referred the default judgment motion in No. 21-CV-1479 to then-Magistrate Judge Reyes "to conduct a damages inquest and issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)."  No. 21-CV-1337, Dkt. No. 77 at 12.

On October 20, 2023, then-Magistrate Judge Reyes ordered AEC Yield and AEC 51 "to submit an affidavit detailing [their] damages, including interest to date, and a rate of interest per diem going forward."  No. 21-CV-1337, Text Order dated October 20, 2023.

On November 9, 2023, the case was reassigned from Judge Reyes to the undersigned.  *See* No. 21-CV-1337, Entry dated November 9, 2023.

AEC Yield and AEC 51 therefore filed a letter to Judge Marutollo informing the Court of this procedural posture and attached an affidavit outlining their damages.  No. 21-CV-1337, Dkt. No. 81.

On February 27, 2024, the Court entered the below order:

Although [AEC Yield and AEC 51's] Motion for Summary Judgment [76] has been referred to the assigned magistrate judge, said motion appears to be moot, as [AHE, HomeEnergy, EnergyInvest, and Enzendorfer's] Third Amended Complaint in 21-CV-1337 has been dismissed per the Court's September 27, 2023 Opinion and Order. The Clerk of the Court is directed to terminate AHE as a plaintiff in the 21-CV-1337 action.

The Court also entered default against AHE in 21-CV-1479 per the Court's September 27, 2023 Opinion and Order. While default has been entered and [AEC Yield and AEC 51] have provided documentation to support a damages inquest, there is currently no pending motion for default judgment. A district court may not convert the pending motion for summary judgment to a motion for default judgment either in the present circumstances. *See Jackson v. Fed. Exp.*, 766 F.3d 189 (2d Cir. 2014); *Golden Goose Deluxe Brand v. AADCT Off. Store*, No. 19-CV-2521 (VSB) (GWG), 2020 WL 3167031, at *1 (S.D.N.Y. June 15, 2020), *report and recommendation adopted*, 2020 WL 6157012 (S.D.N.Y. Oct. 21, 2020) (describing procedural history on a similar set of circumstances). Thus, the requirements set forth by Fed. R. Civ. P. 55 and Local Rule 55.2 including the notice requirements have not yet been met.

In light of the above, the Court orders [AEC Yield and AEC 51] to file a letter by February 29, 2024 indicating whether (1) it will withdraw its motion for summary judgment, without prejudice, on mootness grounds; and (2) if it intends to file a motion for default judgment that is fully compliant with Fed. R. Civ. P. 55 and Local Civil Rule 55.2. Should [AEC Yield and AEC 51] intend to file a motion for default judgment against AHE, the Court shall order that such a motion be filed by March 30, 2024. In said motion, [AEC Yield and AEC 51] can incorporate the damages affirmation that was filed on November 10, 2023 and present an updated interest calculation as appropriate. Dkt. No. 81. Should [AEC Yield and AEC 51] move for default judgment, the Court would intend to issue its report and recommendation shortly after a motion for default judgment is filed.

No. 21-CV-1337, Text Order dated February 27, 2024; No. 21-CV-1479 (same). AEC Yield and AEC 51 responded to the Court's February 27, 2024 order and withdrew their pending motion for summary judgment. No. 21-CV-1337, Dkt. No. 82.

On March 19, 2024, AEC Yield and AEC filed a request for a certificate of default against AHE. No. 21-CV-1479, Dkt. No. 21.

On March 21, 2024, the Clerk of the Court entered a certificate of default against AHE. No. 21-CV-1479, Dkt. No. 22.[1]

 On April 15, 2024, AEC Yield and AEC 51 filed their motion for default judgment.  No. 21-CV-1479, Dkt. Nos. 23, 24.

On April 16, 2024, AEC Yield and AEC 51's motion for default judgment was referred to the undersigned.  No. 21-CV-1479, Text Order dated April 16, 2024.

On May 21, 2024, this Court ordered AEC Yield and AEC 51 to supplement their motion for default judgment with additional information to aiding in the assessment of the reasonableness of the attorneys' fees requested.  No. 21-CV-1479, Text Order dated May 21, 2024.  The Court also requested that AEC Yield and AEC 51 provide additional legal support for the fees requested. *Id.*  On May 28, 2024, AEC Yield and AEC 51 submitted additional contemporaneous records in response to this Court's Order.  Dkt. No. 27.

**B.    Factual Allegations**

The following facts are taken from AEC Yield and AEC 51's Complaint (No. 21-CV-1479, Dkt. No. 1), AEC Yield and AEC 51's motion for default judgment (No. 21-CV-1479, Dkt. No. 23), the attachments filed in support of AEC Yield and AEC 51's motion (No. 21-CV-1479, Dkt. No. 23-1—23-10), and Judge Ross's prior rulings in No. 21-CV-1337.   The facts are assumed to be true for the purposes of this motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *BASF Corp. v. Original Fender*

---

[1] On March 5, 2024, AEC Yield and AEC 51 filed a request for a motion for certificate of default in No. 21-CV-1337.  No. 21-CV-1337, Dkt. No. 83.  But AEC Yield and AEC 51 were defendants in that action, no certificate of default was issued.

*Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *1 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Dkt. Order (E.D.N.Y. Jan. 9, 2024).

Enzendorfer is the sole member of EnergyInvest, which in turn is the sole shareholder of AHE and HomeEnergy. *See Am. Home Energy Inc.*, 2022 WL 5113403, at *1 (citations omitted). AHE and HomeEnergy "install and service solar energy systems for businesses and sometimes purchase customer contracts from other solar energy providers to complete installation." *Id.* AHE and HomeEnergy have their principal place of business in California. No. 21-CV-1337, Dkt. No. 77 at 3. AEC Yield "provides financing, *inter alia*, to businesses in the energy sector and is a Brooklyn-based representative and management agent of [Swiss Alp]. *Am. Home Energy Inc.*, 2022 WL 5113403, at *1 (citation omitted). AEC Yield is co-owned by Richard Rudy and Jack Doueck. *Id.* (citations omitted).

On January 31, 2018, AEC Yield and AHE entered into a Purchase and Sale Agreement ("Purchase and Sale Agreement"). No. 21-CV-1479, Dkt. No. 1 ¶ 14; *see generally* Dkt. No. 1-1. Pursuant to the Purchase and Sale Agreement, AEC Yield agreed to sell AHE certain assets for approximately $3.8 million, including but not limited to, customer contracts for the installation and servicing of solar panels. *Id.* ¶ 15.

AEC Yield and AHE also signed multiple agreements on January 31, 2018; in these agreements, AEC Yield agreed to fully finance AHE's purchase of the assets. No. 21-CV-1479, Dkt. No. 1 ¶ 23. These agreements included (i) a term note, with an initial principal amount of $1,250,000, and a maturity date of September 1, 2019, which was later amended to December 31, 2020 (the "Term Note"), *id.* ¶¶ 23, 24; (ii) a cash-flow note, with an initial principal amount of $2,609,589, and a maturity date of (as modified) of December 31, 2020 (the "Cash Flow Note"), *id.* ¶ 27; (iii) a security agreement, securing both the Term Note and the Cash Flow Note (the

"Security Agreement"), *id.* ¶ 30; and (iv) an Asset-Based Loan Agreement (the "ABL Agreement"), *id.* ¶ 34.

As described below, as of March 26, 2024, AHE owes AEC Yield $13,945,336.46 and AEC 51 $8,166,027.00 in unpaid interest and principal as a result of its breach of the parties' agreements. *See* No. 21-CV-1479, Declaration of Richard Rudy[2] in Support of AEC Yield LLC's and AEC 51 Yield, LLC's Motion for Default Judgment, Dkt. No. 23-2 ¶ 7.

According to AEC Yield and AEC 51, AHE owes a total of $22,111,363.46 to AEC Yield and AEC 51. *See* No. 21-CV-1479, Dkt. No. 23-6. AEC Yield and AEC 51 also seeks, as noted further below, $693,979.54 in attorneys' fees. *Id.*

      **i.**     **The Term Note**

The Term Note had a maturity date of September 1, 2019, and repayment was due in monthly segments beginning March 1, 2018. *See* No. 21-CV-1479, Dkt. No. 1 ¶ 24; *see generally* Dkt. No. 1-2.

Section 9(b) of the Term Note sets out that an event of default occurs when AHE fails to pay "interest, or . . . fees or other amounts payable to [AEC Yield] under th[e Term] Note, and such default is not cured within seven days. No. 21-CV-1479, Dkt. No. 1-2 § 9(b). An event of default also occurs if AHE fails "in the payment or performance of any other obligation arising under the Initial Term Note" and fails to cure within twenty days of a written notice from AEC Yield. *Id.* at 9(d). Additionally, the Term Note explains AEC Yield's remedies in an event of default, to wit: "at the option of [AEC Yield], the entire balance of principal together with all accrued interest thereon shall, without demand or notice, immediately become due and payable and so long as such Event of Default continues, the entire balance of principal together with all

---

[2] Rudy has representative capacity on behalf of AEC Yield and AEC 51 and has knowledge of their activities. Dkt. No. 23-2.

accrued interest shall bear interest at the Default Rate." No. 21-CV-1479, Dkt. No. 1-2 § 10. Further, the Term Note requires AHE to pay AEC Yield's attorneys' fees in the event of default, *i.e.*, "[i]f this Note is not paid when due or if any Event of Default occurs, [AHE] promises to pay all actual, out-of-pocket costs of enforcement and collection, including, without limitation, reasonable attorneys' fees . . . ." No. 21-CV-1479, Dkt. No. 1-2 § 13.

AHE failed to make any payments on the Term Note. No. 21-CV-1479, Dkt. No. 1 ¶ 26. According to AEC Yield and AEC 51, AHE's default has continued throughout this litigation; as of March 26, 2024, AHE owes AEC Yield $2,976,702.86 on the Term Note, inclusive of contractual interest. *See* No. 21-CV-1479, Dkt. No. 23-2 ¶ 6.a.

ii.    **The Cash Flow Note**

The approximately $2,609,589.00 loaned to AHE under the Cash Flow Note had a maturity date (as modified) of December 31, 2020. No. 21-CV-1479, Dkt. No. 1 ¶ 27. Although AHE made payments up until and including December 2020, AHE has made no payments since that time. *See id.* ¶ 29.

Section 9 of the Cash Flow Note provides that an event of default under the Cash Flow Note includes, but is not limited to any occurrence where AHE, "default[s] in the payment of principal due according to the terms of the[e Cash Flow] Note"; "default[s] in the payment of interest, or in the payment of fees or other amounts payable to [AEC Yield Capital] under th[e Cash Flow] Note, and such default is not cured within seven (7) days"; or AHE "default[s] in the payment or performance of any other obligations arising under th[e Cash Flow] Note and such default is not cured within twenty (20) days after receipt of written notice thereof from [AEC Yield]." No. 21-CV-1479, Dkt. No. 1 ¶ 28 (citing Dkt. No. 1-3 §§ 9(a), (b), and (d)).

The Cash Flow Note also requires AHE to pay AEC Yield's attorneys' fees in an event of default; specifically, "[i]f this Note is not paid when due or if any Event of Default occurs, [AHE] promises to pay all actual, out-of-pocket costs of enforcement and collection, including, without limitation, reasonable attorneys' fees . . . ." No. 21-CV-1479, Dkt. No. 1-3 § 13.

Accordingly, AEC Yield and AEC 51 submit that AHE is in default under the Cash Flow Note and currently owes AEC Yield $5,135,727.04, inclusive of contractual interest. No. 21-CV-1479, Dkt. No. 23-2 ¶ 6.b.

### iii.    The Security Agreement

Under the Security Agreement, AHE granted AEC Yield a continuing lien on, and security interest in, the following, as defined in the Security Agreement: all Accounts; all Chattel Paper; all General Intangibles; all Equipment; all Inventory; all Documents; all Instruments; all Deposit accounts and cash collateral; Deposit Accounts including investment accounts; all Computer Records and Software; all Investment Property; and the Proceeds of the foregoing property. *See* No. 21-CV-1479, Dkt. No. 1 ¶ 30; *see also* No. 21-CV-1479, Dkt. No. 1-4, § 2.1 ("Security Agreement").

The Security Agreement defined an "Event of Default" to "mean[] any 'Event of Default' under and as defined in the Term Note or the Cash Flow Note." No. 21-CV-1479, Dkt. No. 1-4 § 1.1. The Security Agreement also requires AHE to pay attorneys' fees, stating that AHE "shall pay or reimburse [AEC Yield] within seven (7) Business Days after demand for all reasonable costs and expenses (including reasonable attorney's fees and paralegal fees) incurred by it in connection with the enforcement, attempted enforcement, or preservation of any rights or remedies under th[e Security Agreement] or any other Loan Document during the existence of an Event of Default or after acceleration of any of the Indebtedness. . . ." *Id.* § 5.5.

13

iv.    **The ABL Agreement**

The ABL Agreement allowed AHE to borrow additional funds from AEC Yield to complete customer installations of solar panels, procure equipment for such installations, and for other general corporate and business purposes.  No. 21-CV-1479, Dkt. No. 1 ¶ 34.  The parties amended the ABL Agreement 11 times between April 2018 and October 2019 to, among other things, increase the amount AHE could borrow.  *Id.; see also* Dkt. No. 1-6.

In December 2018, AEC Yield assigned its rights under the ABL Agreement to AEC 51.  *Id.*  In the ABL Agreement, AHE granted AEC Yield a continuing security interest in: AHE's accounts, contract rights, intangibles, chattel paper, and documents and instruments as defined by the UCC and all rights and title with regard thereto; money, securities, and the proceeds from these items; and all interest that has resulted from the sale of these items; as well as all deposit accounts, books, and records, general intangibles including trademarks; rights with respects to mechanics liens; customer contracts; and inventory, tools, and equipment.  *See* No. 21-CV-1479, Dkt. No. 1-5 § 4.

Section 8.1 provides that all payments could be due and payable without notice if any of the enumerated events of default occurred, including if AHE failed to make payments in accordance with the ABL Agreement or any agreement thereunder, if AHE breached any terms, covenants, or conditions that favored AEC Yield, or if AHE became insolvent or failed to meet its debts as these debts matured.  *Id.*  According to the ABL Agreement, maturity was defined as the sooner of termination of the ABL Agreement or 24 months from initial draw of the Initial Over-Advance.  Dkt. No. 1-5 § 2.

On February 26, 2018, AHE conducted an over-advance withdrawal of $350,000.00.  No. 21-CV-1479, Dkt. No. 1 ¶ 35.  Per the July 31, 2019 Fifth Omnibus Modification and Amendment, the maturity date for these payments was January 31, 2021.  *Id.* ¶ 37.

The ABL Agreement also requires AHE to pay attorneys' fees for enforcement of the agreement, namely, it states that "[a]ll costs and expenses . . . incurred by [AEC Yield] . . . in all efforts made to enforce payment or otherwise effect collection of any Accounts, as well as all attorneys' fees and legal expenses incurred in instituting, maintaining, preserving, enforcing and foreclosing the security interest in any of the Collateral . . . shall be paid for by [AHE] on demand. . . ."  No. 21-CV-1479, Dkt. No. 1-5 § 9.2.

As of March 26, 2024, AHE owes AEC Yield $4,661,541.56 and AEC 51 $5,526,833.50 under the ABL Agreement for a total owed of $10,188,375.06, inclusive of contractual interest.  *See* No. 21-CV-1479, Dkt. No. 23-2 ¶¶ 6.c-d.

### v.    Subsequent Financing Agreements

AEC Yield and AEC 51 extended AHE further financing through a series of additional agreements and amendments executed between June 2018 and March 2020.  These included (i) certain short-term notes (the "Short-Term Notes"); (ii) a litigation financing related facility; and (iii) certain loan facilities issued in connection with the "Sun Run" project.  No. 21-CV-1479, Dkt. No. 1 ¶ 39.

### a.    The Short Term Notes

Two Short-Term Notes were issued in June and August 2018, respectively.  No. 21-CV-1479, Dkt. No. 1 ¶ 40.  The June Short-Term Note was due on August 31, 2018, unless replaced by a subsequent note.  *See* Dkt. No. 1-7.  The June Short-Term Note also requires AHE to pay AEC Yield's attorneys' fees in any event of default.  *See id*. § 13 ("If this Note is not paid when

due or if any Event of Default occurs, [AHE] promises to pay all actual, out-of-pocket costs of enforcement and collection, including, without limitation, reasonable attorneys' fees . . . .").

The August Short-Term Note was entered into shortly after the June Short-Term Note, and a portion of the June Short-Term Note funded the August Note.  No. 21-CV-1479, Dkt. No. 1 ¶ 40.  Per the August Note, 60 weekly installments of $5,000 were required, commencing on September 15, 2018, with the final payment made on the maturity date of November 15, 2019. *See* No. 21-CV-1479, Dkt. No. 1-8 § 2.  Failure to make payments in accordance with the terms of the August Short-Term Note or to cure any such failure, in the case of payments against interest, constituted an event of default.  *Id.* § 11.

None of the payments made on the August Short-Term Note were in accordance with the terms of the agreement.  No. 21-CV-1479, Dkt. No. 1 ¶ 40.  The August Short-Term Note contained the same provision requiring payment of attorneys' fees as the June Short-Term Note.

As of March 26, 2024, AHE owes AEC Yield $52,947.72 on the Short-Term Notes, inclusive of contractual interest. No. 21-CV-1479, Dkt. No. 23-2 ¶ 6.e.

### b.    The Aged AP Promissory Note

On July 31, 2019, AEC Yield made a $550,000 loan to AHE, pursuant to a promissory note (the "Aged AP Promissory Note") for AHE to use in connection with legal claims it believed it had against a commercial channel and distribution partner called Platinum Sales, also known as SunStor or "SSS."  No. 21-CV-1479, Dkt. No. 1 ¶ 41; *see also* Dkt. No. 1-9.

From July to October 2019, AHE borrowed $614,091.99, including interest in accordance with the terms of this document.  No. 21-CV-1479, Dkt. No. 1 ¶ 42.  The maturity date is the earlier of the collection of the first proceeds related to the SSS claim or 30 months from July 31, 2019. *Id.*  The Aged AP Promissory Note also requires AHE to pay AEC Yield's attorneys' fees for

enforcement and collection.  *See* Dkt. No. 1-9 § 13 ("If this Note is not paid when due or if any Event of Default occurs, [AHE] promises to pay all actual, out-of-pocket costs of enforcement and collection, including, without limitation, reasonable attorneys' fees . . . .").

As of March 26, 2024, AHE owes AEC Yield $1,118,417.28, including interest, under the Aged AP Promissory Note.  No. 21-CV-1479, Dkt. No. 1 ¶ 6.f.

### c.    The Sunrun Loan Agreement and Promissory Notes

On October 11, 2019, AHE entered into the Sunrun Loan Agreement with AEC 51.  No. 21-CV-1479, Dkt. No. 1 ¶ 44.  The purpose of the Sunrun Loan Agreement was to acquire equipment and pay costs with regards to ramping up installation capacity ($480,000 allocated), for the payment of aged accounts payments ($350,000 allocated), and, to an extent, for the purpose of bridging minor weather-related cash shortfalls ($70,000 allocated).  No. 21-CV-1479, Dkt. No. 1-10.  The loan facility included a maximum of $950,000 at its inception excluding accrued interest.  *Id*. § 2.  Interest was to be paid on the first of every month.  *Id.* § 3.

The maturity date for the Sunrun Loan Agreement was October 17, 2022, and it required that each funding instrument executed pursuant thereto be paid in full at maturity.  No. 21-CV-1479, Dkt. No. 1-10 § 6.5.  Per the Sunrun Loan Agreement, all obligations are due and payable at AEC 51's option, without notice or demand, upon an Event of Default, which includes AHE failing to pay its debts as they mature.  *See* Dkt. No. 1-10 § 8.1.  These events include AHE's failure to pay AEC 51 when due any amounts owing under any obligation, including all amounts owed from AHE to AEC 51 whether they arise under this agreement or otherwise.  *Id.*

On December 18, 2019, AEC provided additional funding to AHE pursuant to the First Amendment to the Sunrun Loan Agreement.  No. 21-CV-1479, Dkt. No. 1 ¶ 45; *see also* Dkt. No. 1-11.  First, AEC 51 loaned AHE $150,000 for use exclusively with respect to labor, fleet,

insurance, tools, safety systems, recruitment costs and other costs directly related to the ramping up of AHE's installation capacity.  No. 21-CV-1479, Dkt. No. 1 ¶ 45; *see also* Dkt. No. 1-10 § 2.2.  AHE was to repay these funds via weekly payments of $20,000 beginning March 2, 2020, and every week thereafter until it was paid off with interest.  *See id.*  AEC 51 also made available up to $150,000 for use exclusively with respect to AHE's short-term working capital needs, which was to be repaid no later than April 30, 2020.  No. 21-CV-1479, Dkt. No. 1 ¶ 45.  Section 2.2. of the Second Amendment to the Sunrun Loan Agreement, dated January 2, 2020, called for $25,000 weekly payments to AEC 51.  No. 21-CV-1479, Dkt. No. 1 ¶ 46.  AHE failed to make these payments.  *See id.*

### d.    Additional Promissory Notes

The parties also entered into certain promissory notes including the Sunrun Promissory Note, dated October 11, 2019, the Revised Sunrun Promissory Note, dated December 18, 2019, and the Second Revised Promissory Note, dated March 9, 2020.  *See* No. 21-CV-1479, Dkt. No. 1 ¶ 54; *see also* Dkt. Nos. 1-12—1-14.   These promissory notes required payments to be made to the principal for each from the proceeds of each job thereunder with the failure to make these payments constituting an event of default.  *See* No. 21-CV-1479, Dkt. No. 1 ¶ 54.  Furthermore, Section 10(f) of these promissory notes provides that any default under any of the Security Agreement, the Cash Flow Note, the Term Note, the ABL Agreement, or the Aged AP Promissory Note, each as amended, which breach or default is not cured within 20 days after receipt of written notice thereof from AEC Yield, also constitutes an event of default.  *See* No. 21-CV-1479, Dkt. No. 1-12—1-14.  AHE has failed to make payments to the principal for these promissory notes and has defaulted on the other referenced agreements.  *See* No. 21-CV-1479, Dkt. No. 1 ¶ 55.

All of these promissory notes require AHE to pay attorneys' fees for enforcement of the agreements.

In total, as of March 26, 2024, AHE owes AEC 51 $2,639,193.50 on the agreements connected to Sunrun, inclusive of contractual interest. *See* Dkt. No. 23-2 ¶ 6.g.

## II.    <u>Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound*

*Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established."  *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted).  The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt."  *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).  "Courts have significant discretion in granting default judgments and consider the following factors: (1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc.*, No. 23-CV-8001 (DLI) (LGD), 2024 WL 1914347, at

*3 (E.D.N.Y. May 1, 2024) (internal citations omitted); *see also Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

## III.    **Jurisdiction and Venue**

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    **Subject Matter Jurisdiction**

The Court has diversity jurisdiction over Plaintiff's claims because Plaintiff seeks damages, exclusive of attorneys' fees and costs, in excess of $75,000, and the parties are citizens of different states. *See* 28 U.S.C. § 1332; *see* No. 21-CV-1479, Dkt. No. 1 ¶ 11.   As noted above, this Court has already recognized that AHE has a principal place of business in California and AEC Yield and AEC 51 are corporate entities based in New York. *See* No. 21-CV-1337, Dkt. No. 77 at 2.   Accordingly, this Court respectfully recommends a finding that the Court has subject matter jurisdiction over AEC Yield and AEC 51's claims.

### B.    **Personal Jurisdiction**

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp.*, 2023 WL 8853704, at *5 (internal quotation marks and citation omitted); *Nat'l Cas. Co. v. Runway Towing Corp.,* No. 19-CV-5091 (DG) (CLP), 2021 WL 5310857, at *2 (E.D.N.Y. Oct. 19, 2021), *report and recommendation adopted*, 2021 WL 5304055 (E.D.N.Y. Nov. 15, 2021) ("A default judgment may not be granted 'if the defendant has not been

effectively served with process.'") (quoting *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014)). Plaintiff has the burden of showing adequate service. *Nat'l Cas. Co.*, 2021 WL 5310857, at *2.

Indeed, "[e]ven where the Clerk of the Court has entered the defendant's default, [the] court may appropriately review the adequacy of service before entering a default judgment." *Prescription Containers, Inc. v. Cabiles*, No. 12-CV-4805 (CBA) (VMS), 2014 WL 1236919, at *5 (E.D.N.Y. Feb. 14, 2014) (quotations and citation omitted), *report and recommendation adopted*, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).

Here, the Court has personal jurisdiction over AHE because AHE allegedly conducts substantial business in New York and, additionally, consented to jurisdiction in the Eastern District of New York in the Purchase and Sale Agreement, the Term Note, the Security Agreement, the Sun Run Promissory Note, the Short-Term Notes, and the Revised Sunrun Promissory Note. *see* No. 21-CV-1479, Dkt. No. 1 ¶ 12.

Additionally, under Fed. R. Civ. P. 4(h)(1)(B), a corporation can be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." The Federal Rules also permit a plaintiff to serve a corporation according to the law of the state where the district court is located. Fed. R. Civ. P. 4(h)(1)(A); *see Trustees of the United Teamster Pension Fund a v. Juniors Produce Inc.*, No. 15-CV-6927 (ARR) (ST), 2016 WL 4995023, at *2 (E.D.N.Y. Aug. 31, 2016), *report and recommendation adopted*, 2016 WL 4995154 (E.D.N.Y. Sept. 19, 2016).

Here, there can be no dispute that AHE was served, as AHE has answered the Complaint and, until counsel sought to be terminated from the case, had otherwise appeared throughout the litigation in both No. 21-CV-1337 and No. 21-CV-1479.

Accordingly, this Court respectfully recommends a finding that this Court has personal jurisdiction over AHE.

### C.    Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, AEC Yield and AEC 51 argue that venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial number of the events, acts or omissions giving rise to their claims occurred within the boundaries of this judicial district.  AHE did not dispute that this District is the proper venue for this action.

Accordingly, this Court respectfully recommends that venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## IV.    <u>Procedural Compliance</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (citations and quotation marks omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits containing any factual

information and portions of the record necessary for the decision of the motion.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the "*last known residence*" of the defaulting party (if an individual).  Loc. Civ. R. 55.2(b)-(c) (emphasis added).

Here, this Court finds that AEC Yield and AEC 51 has complied with Local Civil Rules 7.1 and 55.2(b).  AEC Yield and AEC 51's motion includes a notice of motion (No. 21-CV-1479, Dkt. No. 23), a memorandum of law (No. 21-CV-1479, Dkt. No. 23-1), a declaration from Mr. Rudy (No. 21-CV-1479, Dkt. No. 1; Dkt. No. 23-2) in accordance with Local Civil Rule 7.1.  AEC Yield and AEC 51 also attaches the complaint, certificate of default, and a proposed form of default judgment to its motion in accordance with Local Civil Rule 55.2(b).  *See* No. 21-CV-1479, Dkt. Nos. 23-4, 23-5, 23-6.

AEC Yield and AEC 51 also complied with Local Civil Rule 55.2(c).  Local Civil Rule 55.2(c) states:

> [u]nless otherwise ordered by the Court, all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) [] shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual). Proof of such mailing shall be filed with the Court.  If the mailing is returned, a supplemental affidavit shall be filed with the Court setting forth that fact, together with the reason provided for return, if any.

Loc. Civ. R. 55.2(c).  AEC Yield and AEC 51 personally delivered a certificate of default on an authorized agent for AHE on April 4, 2024.  *See* No. 21-CV-1479, Dkt. No. 24.   On April 16, 2024, AEC Yield and AEC 51 served their entire motion for default judgment on AHE at their last

known business address. *See* No. 21-CV-1479, Dkt. No. 25. AEC Yield and AEC 51 also served their entire motion for default judgment on an authorized agent for AHE on April 17, 2024. *See* No. 21-CV-1479, Dkt. No. 26; *see also Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. NAMOW, Inc*., No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *3 (E.D.N.Y. Feb. 28, 2018), report and recommendation adopted by, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018) (finding sufficient service whereby service was rendered with "an authorized agent for NAMOW").

Accordingly, the Court respectfully recommends that AEC Yield and AEC 51's motion for default judgment is procedurally compliant under the Local Civil Rules.

## V.    **Default Judgment Factors**

"A threshold question before reaching liability or damages is whether [a defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO*, 2018 WL 1440545, at *2. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp.*, 10 F.3d at 96. These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

Here, AHE's failure to litigate both No. 21-CV-1337 and No. 21-CV-1479 since its counsel withdrew from these cases demonstrates that its default was willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y.

Dec. 20, 2007) (holding that defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment).

As to the second factor, because AHE has failed to appear in this matter for over eight months and has failed to present any defense to the complaint in No. 21-CV-1479, the Court cannot conclude there is any meritorious defense to AEC Yield and AEC 51's allegations. *See, e.g., Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO*, 2018 WL 1440545, at *2. As AEC Yield and AEC 51 correctly note, they have no other means to recover on AHE's breach of the parties' contracts but for a default judgment. *See* No. 21-CV-1479, Dkt. No. 23-1 at 17-18.

As to the third factor, the non-defaulting party, AEC Yield and AEC 51, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Dkt. No. 18 (S.D.N.Y. Jan. 26, 2009).

While AHE raised certain affirmative defenses in its Answer (see No. 21-CV-1479, Dkt. No. 13 at 13-15), several of these affirmative defenses have been struck (see No. 21-CV-1479, Dkt. No. 33); for the remaining defenses, AHE has failed to set forth any evidence to support a complete defense. Significantly, AHE failed to even engage in discovery that may have allowed for the production of such evidence. *See Esquivel*, 2023 WL 633866, at *4 ("Because Defendants abandoned the litigation, the Court cannot determine whether they have meritorious defenses, which warrants default against them.").

The Court now turns to the liability imposed and damages to be awarded in such a judgment.

## VI.    <u>Liability</u>

A federal court exercising diversity jurisdiction applies the law of the forum state, including its choice-of-law rules, to determine the applicable substantive law—here, New York law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941).

Under New York law, "[i]n order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *accord AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022).  Additionally, to establish a prima facie case of default on a promissory note under New York law, a plaintiff "must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment." *Export-Import Bank of U.S. v. Agricola Del Mar BCS*, 536 F.Supp.2d 345, 349 (S.D.N.Y. 2008) (citation omitted).

Here, "AEC Yield and AEC 51 bring eleven bring eleven counts for breach contract based on AHE's breaches of the parties various agreements including the Purchase and Sale Agreement and its amendments (Count 1), the Term Note (Count 2), the Cash Flow Note (Count 3), the Security Agreement (Count 4), the ABL Agreement and amendments (Count 5), the June Short-Term Note (Count 6), the August Short-Term Note (Count 7), the Aged Promissory Note (Count 8), the Sunrun Loan Agreement (Count 9), the Revised Sunrun Promissory Notes (Count 10), and the Second Revised Sunrun Promissory Note (Count 11)."  No. 21-CV-1479, Dkt. No. 23-1 at 14. AEC Yield and AEC 51 argue that:

> First, the parties entered into several different contracts, each of which has been submitted to the Court. *See* [Dkt. Nos. 1-14]. Second, [AEC Yield and AEC 51]

27

> have also submitted evidence that they have fulfilled the terms of these contracts extending millions of dollars in financing to AHE. Third, AHE has breached these contracts by failing to repay the loan amounts in full or in part. *See* Rudy Decl. Finally, [AEC Yield and AEC 51] have been damaged because of these missed payments. AHE currently owes [AEC Yield and AEC 51] $22,111,363.46, inclusive of contractual interest, based on its failure to make payments on the various loan agreements. *See* Rudy Decl. ¶ 7.

No. 21-CV-1479, Dkt. No. 23-1 at 15. AEC Yield and AEC 51 recognizes that AHE initially filed an answer and raised certain affirmative defenses (several of which the Court later struck, as detailed above); at the same time, AEC Yield and AEC 51 correctly notes "that [AHE] failed to put forward any evidence that the loan amounts are not due or that payment was excused." *Id.* at 15-16.

At the default judgment stage, these allegations are sufficient to establish AHE's liability for breach of contract. *See, e.g.*, *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB) (RML), 2022 WL 18558800, at *2 (E.D.N.Y. Dec. 19, 2022) (recommending that plaintiff's motion for default judgment be granted with respect to plaintiff's breach of contract claim), *report and recommendation adopted*, 2023 WL 1766282 (E.D.N.Y. Feb. 3, 2023); *Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-05920 (EK) (PK), 2021 WL 1200329, at *4 (E.D.N.Y. Mar. 9, 2021) (same), *report and recommendation adopted*, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021).

Accordingly, this Court respectfully recommends that AEC Yield and AEC 51's motion for default judgment be granted with respect to its breach of contract claims against AHE.[3]

## VII.    **Damages**

As AHE's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is

---

[3] AEC Yield and AEC 51 initially brought a claim for breach of good faith and dealing (Dkt. No. 1, Count 12); AEC Yield and AEC 51 now state that if the Court grants their motion for default judgment, they will dismiss the claim. *See* No. 21-CV-1479, Dkt. No. 23-1 at 16-17.

not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up). A plaintiff may submit documentary evidence or detailed affidavits to support their damages claim. *Chen*, 2023 WL 2583856, at *14.

AEC Yield and AEC 51 request judgment against AHE in the principal amount of $22,111,363.46. As set forth above, this Court finds that Plaintiff has adequately proven AHE's liability such that judgment may be entered against AHE for this amount. *See Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, No. 16-CV-2696 (ILG), 2017 WL 2912452, at *3 (E.D.N.Y. July 6, 2017) (entering default judgment against defendants for total amount due on plaintiff's breach of contract and breach of guaranty claims).

AEC Yield and AEC 51 do not appear to seek post-judgment interest, but "'the very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered.'" *Echevarria v. ABC Corp.*, No. 21-CV-4959 (JS)(ARL), 2024 WL 1639934, at *5 (E.D.N.Y. Apr. 16, 2024) (citing *Keybank Nat'l Assoc. v. Nour Limo, Inc.*, -- F.R.D. -- , 2024 WL 1230232, at *7 (E.D.N.Y. Mar. 22, 2024)); *see Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (awarding post-judgment interest despite plaintiffs' failure to request post-judgment interest in default judgment motion). This Court therefore respectfully recommends that AEC Yield and AEC 51 be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  **Attorneys' Fees and Costs**

AEC Yield and AEC 51 also seek to recover attorneys' fees and costs from Defendants.  In support of this request (Dkt. No. 23-3), AEC Yield and AEC 51 also provided the Court with "true and correct copies of all invoices reflecting the attorneys' fees incurred by AEC Yield and AEC 51" in connection with this litigation.  *See* Dkt. No. 23-9; Dkt. No. 23-10; Dkt. No. 27.  AEC Yield and AEC 51 "bear [ ] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed."  *General Elec. Co. v. Compagnie Euralair, S.A.*, 96-CV-0884 (SAS) (AP), 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997), *aff'd*, 164 F.3d 617 (2d Cir.1998), *cert. denied*, 525 U.S. 1179 (1999).

### A.    **AEC Yield and AEC 51 are Entitled to Attorneys' Fees**

"[T]he general rule in New York" is that "attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (citation omitted); *see also Quanzhou Joerga Fashion Co., Ltd. v. Brooks Fitch Apparel Grp., LLC*, No. 10-CV-9078 (VM) (MHD), 2011 WL 4063344, at *8 (S.D.N.Y. Aug. 11, 2011) ("There is no question that, absent a contractual provision for fees, a prevailing plaintiff cannot recover those expenses on a contract breach claim.").

Nevertheless, "[u]nder New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action on the contract is enforceable 'if the contractual language is sufficiently clear.'"  *Cty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., L.P.*, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009) (quoting *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)); *see also Mt. Vernon City Sch. Dist. v. Nova Cas. Co.*, 19 N.Y.3d 28, 39 (2012) ("[T]he court should not infer a party's intention to waive

30

the benefit of the [general] rule [that parties pay their own legal fees] unless the intention to do so is unmistakably clear from the language of the promise." (citations omitted)). "In awarding attorneys' fees pursuant to a contract, a court must order the losing party to pay the amount actually incurred by the prevailing party, 'so long as those amounts are not unreasonable.'" *Fulton Cogeneration*, 636 F. Supp. 2d at 179 (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)). Additionally, "[a]ttorneys' fees must be 'documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Id.* (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)).

Here, the Term Note requires AHE to pay AEC Yield's attorneys' fees in the event of default, *i.e.*, "[i]f this Note is not paid when due or if any Event of Default occurs, [AHE] promises to pay all actual, out-of-pocket costs of enforcement and collection, including, without limitation, reasonable attorneys' fees . . . ." No. 21-CV-1479, Dkt. No. 1-2 § 13.

Similarly, the Cash Flow Note requires AHE to pay AEC Yield's attorneys' fees in an event of default; specifically, "[i]f this Note is not paid when due or if any Event of Default occurs, [AHE] promises to pay all actual, out-of-pocket costs of enforcement and collection, including, without limitation, reasonable attorneys' fees . . . ." No. 21-CV-1479, Dkt. No. 1-3 § 13.

The Security Agreement also requires AHE to pay attorneys' fees, stating that AHE "shall pay or reimburse [AEC Yield] within seven (7) Business Days after demand for all reasonable costs and expenses (including reasonable attorney's fees and paralegal fees) incurred by it in connection with the enforcement, attempted enforcement, or preservation of any rights or remedies under th[e Security Agreement] or any other Loan Document during the existence of an Event of Default or after acceleration of any of the Indebtedness. . . ." *Id.* § 5.5.

Likewise, the ABL Agreement requires AHE to pay attorneys' fees for enforcement of the agreement, namely, it states that "[a]ll costs and expenses . . . incurred by [AEC Yield] . . . in all efforts made to enforce payment or otherwise effect collection of any Accounts, as well as all attorneys' fees and legal expenses incurred in instituting, maintaining, preserving, enforcing and foreclosing the security interest in any of the Collateral . . . shall be paid for by [AHE] on demand. . . ."  No. 21-CV-1479, Dkt. No. 1-5 § 9.2.

Accordingly, an award of attorneys' fees is authorized by the parties' contract and Plaintiffs have submitted sufficient documentation detailing the work done by each attorney assigned to this matter.  The Court next turns to what fees are due to AEC Yield and AEC 51's counsel.

### B.    Reasonableness of AEC Yield and AEC 51's Requested Hourly Rates

#### 1.    The Forum Rule

Courts in this Circuit employ the "forum rule," where "the hourly rates [in the] district in which the [ ] court sits" are presumptively reasonable, as well as on "evidence proffered by the parties."  *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174-76 (2d Cir. 2009) (recounting the history of the forum rule); *see also Parsons v. Bong Mines Ent. LLC*, No. 19-CV-813 (JMA) (AKT), 2021 WL 931506 *12 (E.D.N.Y. Feb. 18, 2021), *report and recommendation adopted*, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021) ("To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits."); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 260 (E.D.N.Y. 2014) ("In this Circuit, when calculating reasonable attorneys' fees, courts must presumptively apply the 'forum rule,' which provides that 'courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the

32

presumptively reasonable fee.'") (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009)).

To determine the fees due to plaintiffs' counsel, the Court must ascertain the "presumptively reasonable fee" for the legal services rendered in this matter, that is, "what a reasonable client would be willing to pay[.]" *Masino v. Columbus Constr. Corp.*, No. 08-CV-1592 (RRM) (CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008)). "In determining the amount of attorneys' fees to award, the court sets a "reasonable hourly rate," bearing in mind all the case-specific variables; the court then uses that reasonable hourly rate to calculate the "presumptively reasonable fee" by multiplying the rate by the number of hours reasonably expended. *HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill*, 522 F.3d at 190 & n.4, and *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 (2d Cir. 2007) ("The presumptively reasonable fee analysis involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award.")).

"In setting the reasonable hourly rate, the court is to consider the traditional factors first enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*HVT, Inc.*, 2018 WL 6079932, at *1 (citing *Arbor Hill*, 522 F.3d at 186 n. 3 (citing *Johnson*, 488 F.2d at 717-19)).

"The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates." *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110(JS)(ARL), 2022 WL 866853, at *2 (E.D.N.Y. 2022). "Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high hourly rate, while less complex matters, *even if litigated by experienced counsel*, support a lower rate." *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534 (PKC) (SIL), 2020 WL 423422, at *3 (E.D.N.Y. Jan. 27, 2020) (quoting *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10-CV-2262 (DRH) (AYS), 2019 WL 2870721, at *6 (E.D.N.Y. June 18, 2019), *report and recommendation adopted*, 2019 WL 2869150 (E.D.N.Y. July 3, 2019)) (emphasis added).

### 2.    AEC Yield and AEC 51's Requested Hourly Rates

AEC Yield and AEC 51 have submitted summaries of the legal work performed by its counsel, which is composed of two partners, six associates/staff attorneys, three paralegals, and three non-attorney, non-paralegal professional staff members.  Dkt. No. 23-9.  AEC Yield and AEC 51's counsel recorded 915.4 hours of work performed by attorneys Brendan Quigley, Kevin Jacobs, Sara Probber, Zeinab Bailoun, Kristina Wenner, Yining Bei, Shelby Saxon, Cathy Brandt, and David Archer.  Dkt. No. 23-3; Dkt. No. 27.  Paralegals were also utilized throughout the course of the litigation and included John Mitchell, Marco Giguere, and Kendall Sherman.  *Id.*  Finally, e-discovery resources were used in aid of litigation and included two non-attorneys, Laura Ewing-Pearle and Melinda Augustus.  *Id.*

34

The following table delineates AEC Yield and AEC 51 requested attorneys' fee award (Dkt. No. 27):

| Name | Title | Rate of Pay |
|---|---|---|
| Brendan Quigley | Partner | $1,065 per hour effective 1/1/2021<br><br>$1,130 per hour effective 1/1/2022<br><br>$1,225 per hour effective 1/1/2023 |
| Kevin Jacobs | Partner | $1,100 per hour effective 1/1/2021<br><br>$1,175 per hour effective 1/1/2022<br><br>$1,265 per hour effective 1/1/2023 |
| Sara Probber | Associate | $740 per hour effective 1/1/2021<br><br>$860 per hour effective 1/1/2022 |
| Zeinab Bailoun | Associate | $925 per hour |
| Kristina Wenner | Associate | $715 per hour effective 1/1/2022<br><br>$845 per hour effective 1/1/2023<br><br>$985 per hour effective 1/1/2024 |
| Yining Bei | Associate | $580 per hour |
| Shelby Saxon | Associate | $580 per hour |
| Cathy Brandt | Staff Lawyer | $445 per hour |
| David Archer | Document Review Team Lead | $415 per hour |
| John Mitchell | Paralegal | $390 per hour effective 1/1/2021<br><br>$410 per hour effective 1/1/2022<br><br>$435 per hour effective 1/1/2023 |

| | | $460 per hour effective 1/1/2024 |
|---|---|---|
| Marco Giguere | Paralegal | $410 per hour |
| Kendall Sherman | Paralegal | $370 per hour |
| Laura Ewing-Pearle | E-Discovery | $440 per hour |
| Melinda Augustus | E-Discovery | $345 per hour |

On May 21, 2024, this Court issued a Text Order advising AEC Yield and AEC 51 that more information was required to "fully assess the reasonableness of the attorneys' fees requested." *See* Text Order dated May 21, 2024. This Court requested that AEC Yield and AEC 51 provide, in addition to biographical information of each attorney and staff member who worked on the consolidated, "the number of hours *per* attorney and staff member" and "the rate at which *each* attorney and staff member billed"—including any changes to "individual billing rates over time." *Id.* (emphasis in original). This Court also ordered counsel to file a letter providing supplemental authority in support for the fee applications. *Id.*

While AEC Yield and AEC 51 largely complied with the Court's order (Dkt. No. 27), AEC Yield and AEC 51 did not provide authority justifying its requested rates in light of decisional authority in this District—especially as fee awards are determined by the Second Circuit's adherence to the "forum rule" outlined above. *See Arbor Hill*, 522 F.3d at 190. "Unless a party shows that 'not only the selection of out-of-district counsel was predicated on experience-based, objective factors, [such as counsel's special expertise in litigating the particular type of case], but also of the likelihood that use of in-district counsel would produce a substantially inferior result,' a litigant cannot overcome the presumption of the forum rule." *S.A. ex rel. M.A.K. v. New York*

*City Dep't of Educ.*, No. 12-CV-435 (RMM), 2015 WL 5579690, at *3 (E.D.N.Y. Sept. 22, 2015) (alteration in original) (quoting *Simmons*, 575 F.3d at 176).

The Eastern District of New York has held that "[i]n this district, hourly rates 'generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience.'" *Cidoni v. Woodhaven Ctr. of Care*, No. 21-CV-03654 (JMA) (JMW), 2023 WL 2465167, at *4 (E.D.N.Y. Mar. 10, 2023) (citing *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073 (FB) (RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023)). Higher rates are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter. *Williamsburg Climbing Gym Co. LLC*, 2023 WL 1072952 at *4. Higher rates can also be approved upon a showing that a reasonable client could pay "out-of-district rates." *Allied 100, LLC v. Chadha*, No. 20-CV-03493 (AMD) (PK), 2021 WL 7184241 (E.D.N.Y. July 26, 2021).

In *Arbor Hill*, the Second Circuit formulated a guidance on reasonableness to instruct assessment of fees by district courts:

> We now clarify that a district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

*Arbor Hill*, 522 F.3d 182, 191 (2d Cir. 2008). One such unusual case that may rebut the presumption outlined in *Arbor Hill* is in cases involving highly specialized and complex areas of

law.  *See, e.g., Maddaloni v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 19-CV-3146 (RPK) (ST), 2023 WL 7000885, at *6 (E.D.N.Y. Sept. 1, 2023), *report and recommendation adopted*, 2023 WL 6457756 (E.D.N.Y. Oct. 4, 2023).  In *Maddaloni*, the court found it reasonable to apply the out-of-district rate requested by Plaintiff—which was a rate typical in the Southern District of New York.  *Id.*   In reaching this conclusion, the *Maddaloni* court held that litigation under the Employee Retirement Income Security Act ("ERISA") is "a niche and highly specialized field" justifying "the assistance of specialized attorneys"—especially where "no lawyers from [the district] have ever been willing to take on this litigation." *Id.* (quoting *Frommert v. Conkright*, 223 F.Supp.3d 140, 149 (W.D.N.Y. 2016)).

Here, there are no unique circumstances that would justify a drastic departure from the prevailing market rates in this district.  Indeed, AEC Yield and AEC 51's fee application does not address the forum rule or "compare the requested rates to those founds reasonable in the Eastern District." *Allied 100, LLC*, 2021 WL 7184241, at *10.  AEC Yield and AEC 51 also do not make a "'particularized showing' demonstrating 'the likelihood that the use of in-district counsel would have produced a substantially inferior result.'" *McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 421 n.6 (2d Cir. 2010).  While AEC Yield and AEC 51's fee application thoroughly details the substantive and procedural history of this case (as recited *supra*) (Dkt. Nos. 23-3; 23-7; 27), the application is silent as to legal authority for the requested individual rates—especially as the requested fee award nearly doubles standard fee awards for complex commercial litigation in this District.  Further, the complexity and difficulty of this case largely stemmed from the thorny procedural history of this litigation—especially as this case ultimately concerned a straightforward application of contract law.  *See Maddaloni,* 2023 WL 7000885 at *6; *Nat'l Env't Safety Co., Inc. v. Katz*, No. 18-CV-02161 (JMA) (GRB), 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019)

(reducing requested hourly rates in motion for default judgment involving breach of a promissory note).

Accordingly, the Court will apply the forum rule to determine the reasonable rates for AEC Yield and AEC 51's counsel and respectfully recommends that the requested rates be reduced for the reasons below.[4]

### a.   Partners

AEC Yield and AEC 51 requests an hourly rate ranging between $1,065 and $1,225 for partner Brendan Quigley.  *See* Dkt. No. 27, at 3.

Mr. Quigley, who has been practicing since 2008, clerked for the Honorable Joseph F. Bianco while he was a district judge in the Eastern District of New York, served as an associate at

---

[4] While the Court is bound by the Second Circuit's forum rule as to hourly rates, *see Simmons*, 575 F.3d at 174, *Arbor Hill*, 522 F.3d at 190, this Court notes the concerns raised by other courts in this Circuit, as summarized below:

> [T]he Court acknowledges that the hourly rates charged by attorneys with similar levels of experience in the Southern District of New York[], which is located less than two miles away from [the Eastern District of New York], and in the District of Columbia[] are higher than those typically awarded in [the Eastern District]. The Court believes that from a financial perspective, the difference between practicing in [the Eastern District] as opposed to the Southern District or the District of Columbia is minimal.  In reality, attorneys practicing in [the Eastern District] also practice in the Southern District, and often have their offices in Manhattan, as Plaintiff's counsel does. It may be unreasonable to expect that those attorneys would charge their clients different hourly rates based on whether a case was brought in [the Eastern District] or the Southern District.  [] The court should make adjustments to the number of hours based on case-specific factors, including, for example, deductions for "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see Nature's Enters., Inc. v. Pearson*, No. 08-CV-8549 (JGK), 2010 WL 447377, at *10 (S.D.N.Y. Feb. 9, 2010).

*HVT, Inc.*, 2018 WL 6079932, at *2.   Indeed, the Eastern and Southern Districts of New York are "linked together by numerous bridges, tunnels and highways; indeed, the two district courthouses are each juxtaposed to the Brooklyn Bridge, within an easy stroll from each other."  *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 300 (E.D.N.Y. 2010) (discussing the forum rule);  *Gutman v. Klein*, No. 03-CV-1570 (BMC), 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009), *aff'd*, 515 F. App'x 8 (2d Cir. 2013) ("It may be that the concept of a geographically-based as opposed to case complexity-based lodestar will someday have as much relevance to the selection of an attorney as dinosaurs have to birds").

a private law firm, served as an Assistant United States Attorney in the Southern District of New York for seven years, and has been a partner at the law firm Baker Botts since September 2019. *See* Dkt. No. 23-3.

Nonetheless, with 16 years of experience to date, Mr. Quigley's rates figure substantially above even the highest rates awarded in this District for attorneys with specialized experience in complex matters. *See Schwartz v. United States Drug Enf't Admin.,* No. 13-CV-5004 (CBA) (ST), 2019 WL 1299192 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (collecting cases awarding hourly rates of $500 to $655 per hour for supervisory partners with specific subject-matter expertise and finding $500 to be a reasonable hourly rate for senior partners); *see, e.g., Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc*., No. 16-CV-1390 (PKC) (SIL), 2024 WL 2387406, at *3 (E.D.N.Y. May 23, 2024) (collecting cases); *Yanes v. Juan & Jon Inc.*, No. 19-CV-0201 (JS) (LGD), 2024 WL 1639932, at *1 (E.D.N.Y. Apr. 16, 2024) (explaining that "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases.") (citations omitted); *Cidoni*, 2023 WL 2465167, at *4; *Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-CV-5887 (KAM) (SMG), 2020 WL 6393016, at *5 (E.D.N.Y. Nov. 2, 2020), *reconsideration denied*, 2020 WL 7625411 (E.D.N.Y. Dec. 22, 2020) (awarding $550 for senior partners, "slightly higher than the rates often awarded under fee-shifting statutes," because such rates were "not unreasonable rates for a paying client to incur in connection with a complex trademark infringement suit brought by a sophisticated medical device company."); *Katz*, 2019 WL 1994049, at *2 (awarding rates of $500 to $600 for partners on a motion for default judgment involving a breach of a promissory note claim); *Allied 100, LLC*, 2021 WL 7184241, at *11 (awarding an hourly rate of $550.00 to

partners with 20 years of experience where the breach of contract action involved an international dispute, overseas parties, and large contracts).

Accordingly, in light of the authority in this District, this Court finds an hourly rate of $500.00 reasonable for Mr. Quigley.

Additionally, AEC Yield and AEC 51 requests an hourly rate ranging between $1,100.00 and $1,265.00 for work performed by Kevin Jacobs, also a partner at Baker Botts. Dkt. No. 27, at 3. Mr. Jacobs has been practicing since graduating from law school in 1999, clerked for a circuit judge on the United States Court of Appeals for the Fifth Circuit, and has been an attorney at Baker Botts since September 2000. Dkt. No. 23-3 at 3. For the same reasons undergirding Mr. Quigley's fee award calculation (and accounting for Mr. Jacobs's 25 years of experience), this Court finds an hourly rate of $550.00 reasonable for Mr. Jacobs.

### b.    Associates and Staff Attorneys

Similarly, AEC Yield and AEC 51 have submitted requests for fee awards for the work performed by associates Sara Probber, Zeinab Bailoun, Kristina Wenner, Yining Bei, Shelby Saxon, and staff attorney Cathy Brandt.

AEC Yield and AEC 51 request an award ranging between $740.00-$860.00 per hour for work performed by Ms. Sara Probber. Dkt. No. 27 at 3. Ms. Probber has been practicing since 2018 and joined Baker Botts in October 2018. Dkt. No. 23-3. The requested rates are above those normally awarded in this District for similarly qualified attorneys. "Courts in the Eastern District have recently awarded hourly rates ranging from $100 to $325 for associates." *Williamsburg*, 2023 WL 1072952, at *5 (citations omitted) (awarding $325.00 per hour for associates with over five years of experience); *Cap. One*, 2020 WL 423422, at *4 (awarding $300.00 per hour for associates with more than eight years' experience and $250 per hour for those with fewer than five

41

years' experience for a non-complex case); *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV)(RML), 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (complex class action settlement awarding $350 for senior associates with six to nine years' experience and $300 for associates with three to five years' experience).  Given the nature of this case, this Court finds that an hourly award of $325.00 for work performed by Ms. Probber is reasonable.

For work performed by Ms. Zeinab Bailoun, AEC Yield and AEC 51 request an award of $845.00 per hour.  Dkt. No. 27, at 3.  But given that Ms. Bailoun has been practicing since 2019, and for the same reasons undergirding Ms. Probber's award calculations, this Court finds an hourly rate of $300.00 reasonable for work performed by Ms. Bailoun.   Dkt. No. 23-3 at 4.

For work performed by Ms. Kristina Wenner, AEC Yield and AEC 51 request an hourly award ranging between $715.02-$985.00.  Dkt. No. 27 at 3.  Ms. Wenner has been practicing since graduating from law school in 2020 and has been at Baker Botts since September 2021 following a clerkship.  Dkt. No. 23-3, at 4.  For the reasons set forth above, this Court finds that an hourly rate of $275.00 reasonable for work performed by Ms. Wenner.

For work performed by Ms. Yining Bei and Ms. Shelby Saxon, who have both been practicing since 2021, AEC Yield and AEC 51 request hours awards of $580.00-$580.01.  This Court does not find that their respective experiences support a departure of the range deemed appropriate in this district and finds that an hourly rate of $250.00 reasonable in this instance.

AEC Yield and AEC 51 also request a fee award for work performed by Ms. Cathy Brandt, (staff lawyer at Baker Botts) and David Archer (document review team lead).  *See* Dkt. No. 27 at 3.  Ms. Brandt, whose requested hourly rate is $445.00, has 20 years of experience working on matters involving contract and fiduciary duty issue, along with a law degree obtained in 1986. Dkt. No. 23-3, at 4-5.  Mr. Archer, whose requested hourly rate is $415.00, graduated from law

school 27 years ago—though it is unclear exactly how many years of experience he has as a document review team lead.  Dkt. No. 23-2, at 5.  This Court declines to find the requested hourly rates of $445.00 (for Ms. Brandt) and $415.00 (for Mr. Archer) reasonable.  Dkt. No. 27.3.  *Cf. Cap. One, N.A.*, 2020 WL 423422, at *4 (finding a request for an hourly rate of $225 for a staff attorney with more than 20 years of experience reasonable); *see Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2010 WL 2772493, at *3–4 (E.D.N.Y. June 21, 2010) *report and recommendation adopted*, 2010 WL 2772342 (E.D.N.Y. July 12, 2010) (finding an hourly award of $250.00 reasonable).  As this court is "mindful that attorney rates simply do not stagnate in the marketplace [and generally] increase over time" (*Bozdogan v. 23 Ludlam Fuel, Inc.*, No. 16-CV-1053 (JMW), 2022 WL 17987044, at *4 (E.D.N.Y. Dec. 29, 2022)), this Court finds an hourly award of $325.00 reasonable for both Ms. Brandt and Mr. Archer in this instance.

### c.    Paralegals

AEC Yield and AEC 51 seek hourly rates ranging from $370-$460 for work performed by paralegals John Mitchell, Marco Giguere, and Kendall Sherman.  Dkt, No. 27 at 3-4.  A reduction in rate is warranted in this instance.  *See Maddaloni*, 2023 WL 7000885 at *6 (finding that reasonable rates in cases involving "a straightforward application of contract law" should be $150.00 for work performed by paralegal and non-attorney personnel); *Allied 100, LLC*, 2021 WL 7184241, at *12 (reducing hourly rates saw by senior paralegals at a large law firm from $415.00 to $120.00); *Cap. One, N.A.*, 2020 WL 423422, at *4 (awarding $100.00 per hour for experienced paralegals and $70.00 per hour for those with less or minimal experience).

Accordingly, this Court finds an hourly award of $175.00 for work performed by paralegals John Mitchell, Marco Giguere, and Kendall Sherman reasonable in this instance.

### d.    Professional Staff

Finally, AEC Yield and AEC 51 represent that they have utilized Baker Botts' e-discovery resources throughout the course of this litigation.  For work performed by Ms. Laura Ewing-Pearle and Ms. Melinda Augustus, AEC Yield and AEC 51 seek hourly rates ranging between $345.00 and $440.04.  Notably, AEC Yield and AEC 51 do not outline any particular expertise from the e-discovery staff warranting rates that far exceed those allocated to staff members of litigation teams in this District.  *See Amerisource Corp. v. Rx USA In'l Inc.,* No. 02-CV-2514 (JMA), 2010 WL 2160017, at *11 (E.D.N.Y. May 26, 2010) (finding $80 reasonable for support staff)*; Cap. One, N.A.*, 2020 WL 423422, at *4 (awarding $75 for support staff in 2020).

According, this Court finds an hourly award of $125.00 for work performed by support staff to be reasonable here.

In sum, this Court recommends that AEC Yield and AEC 51's requested fee awards be modified as outlined below:

| Name | Title | Requested Hourly Fees | Modified Hourly Fees |
|---|---|---|---|
| Brendan Quigley | Partner | $1,065 - $1,225 | $500.00 |
| Kevin Jacobs | Partner | $1,100 - $1,265 | $550.00 |
| Sara Probber | Associate | $740 - $860 | $325.00 |
| Zeinab Bailoun | Associate | $925 | $300.00 |
| Kristina Wenner | Associate | $715 - $985 | $275.00 |
| Yining Bei | Associate | $580 | $250.00 |
| Shelby Saxon | Associate | $580 | $250.00 |
| Cathy Brandt | Staff Lawyer | $445 | $325.00 |

| | | | |
|---|---|---|---|
| David Archer | Document Review Team Lead | $415 | $325.00 |
| John Mitchell | Paralegal | $390 - $460 | $175.00 |
| Marco Giguere | Paralegal | $410 | $175.00 |
| Kendall Sherman | Paralegal | $370 | $175.00 |
| Laura Ewing-Pearle | E-Discovery | $440 | $125.00 |
| Melinda Augustus | E-Discovery | $345 | $125.00 |

### C.    Reasonableness of Hours Billed

Attorneys must submit contemporaneous records with their fee applications to document the hours reasonably billed. *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010); *Hershkowitz v. ARstrat, LLC*, No. 21-CV-6093 (EK) (TAM), 2023 WL 2311429, at *2 (E.D.N.Y. Jan. 25, 2023), *report and recommendation adopted*, 2023 WL 2306071 (E.D.N.Y. Feb. 28, 2023) ("With very limited exceptions, contemporaneous time records are a prerequisite for attorney's fees in this Circuit.") (citations omitted).

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Courts, however, "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). If a fee application has "such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation and citation omitted).

Here, AEC Yield and AEC 51 have submitted the contemporaneous time and billing records for this Court's review. Dkt. No. 23-9. The Court has closely reviewed the time entries

(and compared each entry with corresponding docket entries) and is satisfied that counsel's representations closely reflect the lengthy and laborious nature of this litigation.  This matter, due in large part to the actions of the defaulting Defendants, spanned over three years and included multiple amended complaints, dispositive motion practice, an appearance in federal bankruptcy court in California, and the instant motion for default judgment.  *See generally* Dkt. No. 27.  This Court also closely reviewed the billing records for "block-billing"—a practiced "frowned upon [] since it amounts to "the lumping together of discrete tasks with others that are not clearly defined, which makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity."  *Bozdogan,* 2022 WL 17987044, at *4 (citing *Douvon v. New York Medical Health Care, P.C.*, 49 F. Supp. 3d 328, 350 (E.D.N.Y. 2014)).  This Court notes that the time entries even reflected a clear effort to avoid block-billing—with attorneys breaking down individual entries with the time spent on discrete tasks.

Accordingly, this Court respectfully recommends a finding that the hours billed throughout the course of this litigation were reasonable as outlined in the following table:

| Name | Title | Hours |
|---|---|---|
| Brendan Quigley | Partner | 222.45 |
| Kevin Jacobs | Partner | 45.8 |
| Sara Probber | Associate | 244.45 |
| Zeinab Bailoun | Associate | 0.7 |
| Kristina Wenner | Associate | 161.50 |
| Yining Bei | Associate | 60.40 |
| Shelby Saxon | Associate | 3.7 |
| Cathy Brandt | Staff Lawyer | 48.40 |

| | | |
|---|---|---|
| David Archer | Document Review Team Lead | 64.30 |
| John Mitchell | Paralegal | 47 |
| Marco Giguere | Paralegal | 4.5 |
| Kendall Sherman | Paralegal | 5.8 |
| Laura Ewing-Pearle | E-Discovery | 5.8 |
| Melinda Augustus | E-Discovery | 0.6 |

### D.     Reasonableness of the Requested Fee Award

To arrive at the presumptively reasonable fee, once the Court determines the reasonable hourly rate, it multiplies that rate by the reasonable number of hours expended. *See Masino*, 2009 WL 2566956, at *7–8. In light of the above, this Court recommends that AEC Yield and AEC 51 be awarded $326,253.75 in attorneys' fees as outlined in the following table:

| Name | Title | Hours | Hourly Rate | Fee Award |
|---|---|---|---|---|
| Brendan Quigley | Partner | 222.45 | $500.00 | $111,225.00 |
| Kevin Jacobs | Partner | 45.8 | $550.00 | $25,190.00 |
| Sara Probber | Associate | 244.45 | $325.00 | $79,446.25 |
| Zeinab Bailoun | Associate | 0.7 | $300.00 | $210.00 |
| Kristina Wenner | Associate | 161.5 | $275.00 | $44,412.50 |
| Yining Bei | Associate | 60.4 | $250.00 | $15,100.00 |
| Shelby Saxon | Associate | 3.7 | $250.00 | $925.00 |
| Cathy Brandt | Staff Lawyer | 48.4 | $325.00 | $15,730.00 |

| | | | | |
|---|---|---|---|---|
| David Archer | Document Review Team Lead | 64.3 | $325.00 | $20,897.50 |
| John Mitchell | Paralegal | 47 | $175.00 | $8,225.00 |
| Marco Giguere | Paralegal | 4.5 | $175.00 | $787.50 |
| Kendall Sherman | Paralegal | 5.8 | $175.00 | $1,015.00 |
| Laura Ewing-Pearle | E-Discovery | 5.8 | $125.00 | $725.00 |
| Melinda Augustus | E-Discovery | 0.6 | $125.00 | $75.00 |
| TOTAL | | 915.4 | | $323,963.75 |

In the interest of clarity, the following table compares the requested fee awards to the actual modified fee awards:

| Name | Title | Hours | Requested Hourly Rates | Actual Hourly Rates | Requested Fee Award | Actual Fee Award |
|---|---|---|---|---|---|---|
| Brendan Quigley | Partner | 222.45 | $1,065 - $1,225 | $500.00 | $243,617.32 | $111,225.00 |
| Kevin Jacobs | Partner | 45.8 | $1,100 - $1,265 | $550.00 | $52,357.55 | $25,190.00 |
| Sara Probber | Associate | 244.45 | $740 - $860 | $325.00 | $187,551.65 | $79,446.25 |
| Zeinab Bailoun | Associate | 0.7 | $925 | $300.00 | $647.50 | $210.00 |
| Kristina Wenner | Associate | 161.5 | $715 - $985 | $275.00 | $110,188.33 | $44,412.50 |
| Yining Bei | Associate | 60.4 | $580 | $250.00 | $26,661.78 | $15,100.00 |

| | | | | | |
|---|---|---|---|---|---|
| Shelby Saxon | Associate | 3.7 | $580 | $250.00 | $2,146.00 | $925.00 |
| Cathy Brandt | Staff Lawyer | 48.4 | $445 | $325.00 | $19,384.20 | $15,730.00 |
| David Archer | Document Review Team Lead | 64.3 | $415 | $325.00 | $24,016.05 | $20,897.50 |
| John Mitchell | Paralegal | 47 | $390 - $460 | $175.00 | $19,044.60 | $8,225.00 |
| Marco Giguere | Paralegal | 4.5 | $410 | $175.00 | $1,845.00 | $787.50 |
| Kendall Sherman | Paralegal | 5.8 | $370 | $175.00 | $2,146.00 | $1,015.00 |
| Laura Ewing-Pearle | E-Discovery | 5.8 | $440 | $125.00 | $2,373.87 | $725.00 |
| Melinda Augustus | E-Discovery | 0.6 | $345 | $125.00 | $207.00 | $75.00 |
| TOTAL | | 915.4 | | | $692,186.85 | $326,253.75 |

## IX.  Conclusion

Accordingly, for the reasons set forth above, this Court respectfully recommends that AEC Yield and AEC 51's motion for default judgment be granted in part and denied in part.  This Court respectfully recommends that AEC Yield and AEC 51 be awarded $22,111,363.46.  The Court also respectfully recommends that AEC Yield and AEC 51 be awarded post-judgment interest. This Court further respectfully recommends that AEC Yield and AEC 51 be awarded $323,963.75 in attorneys' fees.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to AEH by May 31, 2024.

American Home Energy, INC,
c/o Resident Agents Inc.
8 The Green, Suite R,
Dover, DE, 19901

Plaintiff shall file proof of service by May 31, 2024.

This Court also respectfully recommends that the Clerk of the Court close No. 21-CV-1337 in light of the Court's prior rulings, as described above.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Ross. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York
              May 30, 2024

                                        **SO ORDERED.**


                                         */s/ Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge